UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONALD FRANK MORLANDO, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | No. 3:10cv1258 (MRK) |
| : | |
| MICHAEL J. ASTRUE, Commissioner : | |
| of the Social Security Administration, : | |
| : | |
| Defendant. : | |

**MEMORANDUM OF DECISION**

Plaintiff Donald Frank Morlando seeks review, under 42 U.S.C. § 405(g), of a decision by the Commissioner of the Social Security Administration, Defendant Michael Astrue, that denied him Supplemental Security Income (SSI) benefits. *See* Mot. to Reverse [doc. # 31]. The Commissioner, in turn, seeks an order affirming the decision [doc. # 33]. Because the Administrative Law Judge hearing Mr. Morlando's case failed to adequately develop the administrative record, Plaintiff's motion is GRANTED, Defendant's motion is DENIED, and the decision of the Commissioner is REMANDED for further proceedings consistent with this opinion.

I.

Mr. Morlando filed for Social Security Income benefits on December 27, 2007, alleging problems with his back, neck, and mental health which together limited his ability to work. *See* Admin. R. [hereinafter "A.R."] at 144. On his initial application, Mr. Morlando claimed that he could not sit or stand for long periods of time, that he experienced aggravation and anger, and that he had difficulty moving his arms. A.R. 144. His application was denied,

1

both initially and on reconsideration. A.R. 55, 59. Mr. Morlando appealed, and on January 10, 2010, a video hearing was conducted by Administrative Law Judge ("ALJ") Marlene W. Heiser. A.R. 7.

ALJ Heiser applied the familiar five-step procedure to determine whether Mr. Morlando was disabled under the terms of the Social Security Act. *See* 20 C.F.R. § 404.1520; *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); A.R. 8-14. At step one, she determined that Mr. Morlando had not engaged in substantial gainful activity since the date of his application. A.R. 9. At step two, she identified three severe impairments: Mr. Morlando's cervical fusion from 1994, his dysthymic disorder, and his degenerative disc disease of the lumbar spine. A.R. 9. Moving to step three, the ALJ determined that none of these impairments, alone or in combination, met or equaled one of the impairments listed the regulations. *See* 20 C.F.R. § 404, Subpart P, App. 1; A.R. 10.

At step four, the ALJ considered Mr. Morlando's stated symptoms—including chronic neck and back pain; hand numbness; aversion to other people; obsessive compulsive disorder; mood swings; problems turning his head; pain when standing, sitting, or walking for prolonged periods; difficulty typing, tying his shoes, opening jars, and lifting items weighing more than ten pounds; and memory problems—but decided, after "considering the evidence of record," that Mr. Morlando's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible to the extent alleged." A.R. 11-12. In support, the ALJ cited reports by three examining physicians: a rheumatologist who saw Mr. Morlando once in February 2008, a consulting physician who examined Mr. Morlando in May 2008, and a consulting psychologist who examined Mr. Morlando in April 2008. A.R. 12-13 ("Athough they were only examining, and not treating physicians, I gave great weight to the

opinions of Drs. Badillo-Maritnez, Czarsty and Blanco . . . ."). The ALJ also noted the absence of back or neck complaints in Mr. Morlando's "most recent treatment records from the Department of Corrections." A.R. 12. She concluded that Mr. Morlando

> has the residual functional capacity to perform light work, except that he must have the ability to change his position from sitting to standing at will; he cannot climb ladders or be exposed to unprotected heights and moving machinery; he is limited to performing simple, routine, repetitive tasks involving short, simple instructions in an environment with few workplace changes and limited contact with others.

A.R. 11. This residual functional capacity, according to the ALJ, made it impossible for Mr. Morlando to perform any of his "past relevant work." A.R. 13.

Reaching step five, and relying on the testimony of a vocational expert who testified at the hearing, the ALJ found that Mr. Morlando, given his age, education, experience, and capacity, could do "other work that exists in significant numbers in the national economy"; as a result, he was found not to qualify for disability benefits. A.R. 14.

After the Decision Review Board failed to complete a review within its ninety-day window, the decision of the ALJ became final on June 8, 2010. Mr. Morlando timely filed a Complaint [doc. # 2] in this Court on August 6, 2010 and moved for a reversal of the Commissioner's decision and a remand for a new hearing. The Commissioner subsequently moved for an order affirming his decision.

## II.

As an applicant for Supplemental Security Income benefits, Mr. Morlando bears the burden of demonstrating to the Commissioner that he has been unable to work since December 27, 2007 because of a disability. A disability is defined for this purpose as a "medically determinable physical or mental impairment [or combination of impairments] which c[ould] be expected to result in death or which has lasted or can be expected to last for

3

a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For his claim to prevail, Mr. Morlando must show that his impairment or combination of impairments is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1520(c) (requiring that impairment must "significantly limit[] . . . physical or mental ability to do basic work activities" in order to be considered "severe").

Through the fourth step of the analysis described above, Mr. Morlando carried the burdens both of production and persuasion; however, as the ALJ recognized in this case, *see* A.R. 9, at the fifth step "there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform." *Gonzalez ex rel. Guzman v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 360 F. App'x 240, 243 (2d Cir. 2010) (summary order). Throughout the analysis, "[e]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute, to be broadly construed and liberally applied." *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978) (quotation marks omitted); *see Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990).

This Court's ability to review the Commissioner's decision is limited. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126 (2d Cir. 2000) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is less than a preponderance of the evidence, but "more than a mere scintilla"—it is the amount of evidence that "a reasonable mind might accept as adequate to support a

conclusion." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This has been deemed a "fairly deferential standard." *Gonzalez*, 360 F. App'x at 242.

However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). "Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (quotation marks omitted).

### III.

Mr. Morlando appeared *pro se* at his hearing before the ALJ, but he now benefits from the assistance of counsel. In support of his Motion to Reverse or Remand [doc. # 31], he offers fourteen reasons why he did not receive a full and fair hearing on January 7, 2010. The question he raises is not, as the Commissioner believes, about "whether substantial evidence in the record supports the ALJ's decision." Def.'s Mem. in Supp. [doc. # 33-1] at 2. Instead, the more compelling of Mr. Morlando's arguments force the Court to ask whether the ALJ committed an error of law by failing to affirmatively to develop an adequate administrative record. *See Echevarria v. Sec. of Health and Human Servs.*, 685 F.2d 751 (2d Cir. 1982) ("[I]n deciding whether the Secretary's conclusions on this issue are supported by substantial evidence . . . we must first satisfy ourselves that the claimant has had a full hearing . . . in accordance with the beneficent purposes of the Act." (quotation marks omitted)).

Some of Mr. Morlando's claims raise this error of law directly. *See, e.g.*, Pl. Mem. in Supp. [doc. # 31-1] at 18 ("The ALJ failed to obtain information from Plaintiff's treating

5

physician"), 16 ("The ALJ did not obtain Plaintiff's complete records from the Connecticut Department of Corrections"), 17 ("The ALJ did not obtain Plaintiff's pre-2007 records"), 23 ("The ALJ did not evaluate Plaintiff's cognitive impairment"). Others target the same error less directly: the claims, for example, that Mr. Morlando was unrepresented at his hearing, *see id.* at 14, or that he could not adequately prepare, *see id.* at 18, ultimately reduce to the argument that *because* he was unrepresented or unprepared, the record in this case remains inadequately developed—the same complaint as before. According to Mr. Morlando, the ALJ should have subpoenaed Mr. Morlando's primary treating physician, Dr. Michael Clemens; obtained more complete and recent medical records; requested an evaluation from a psychiatrist; and ordered an IQ test. *See id.* at 16-17, 18, 22, 23. In the end, these claims all raise a single question: Should more have been done to try to compile a more complete record in Mr. Morlando's case? For the reasons that follow, the Court believes that the answer is yes.

### IV.

The Second Circuit has repeatedly emphasized that in the non-adversarial setting of a Social Security hearing, the ALJ has a duty to affirmatively develop the administrative record. *See Rosa*, 168 F.3d at 79 (remanding because the ALJ had not taken affirmative steps to fill gaps in the administrative record); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (remanding to fill gaps in the record and noting that "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record." (quotation marks omitted, second alteration in original)); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (affirming an ALJ's decision because it considered the report of the claimant's treating physician); *Echevarria*, 685 F.2d at 755 (requiring ALJ to obtain more detailed statements from treating

physicians before dismissing their prognoses).  This "affirmative obligation . . . exists even when a claimant is represented by counsel." *See Perez*, 77 F.3d at 47.

"[T]he ALJ's duties are heightened" when a claimant, such as Mr. Morlando, proceeds *pro se*. *Moran v. Astrue*, 596 F.3d 108, 113 (2d Cir. 2009) (quotation marks omitted). In cases where a claimant lacks counsel, not only is "the ALJ under a heightened duty to scrupulously and conscientiously . . . explore for all the relevant facts," *id.*, but the reviewing court also "has a duty to make a searching investigation of the record to ensure that the claimant's rights have been adequately protected." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (quotation marks omitted); *see also Gold v. Sec. of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972).

In addition to the special solicitude required for *pro se* claimants, the Second Circuit has also emphasized the extra care necessary "when adjudicating the claims of a litigant whose mental capacity is in question." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 514 (2d Cir. 2002). In *Chapman*, the Second Circuit singled out for approval a Ninth Circuit case which held that "independent of whether a Social Security applicant is represented by counsel, an administrative law judge's duty to develop the record is 'especially important' in cases involving mental impairment." *Id.* (citing *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991)). Thus, the heightened duty that the ALJ owed to Mr. Morlando because he lacked counsel was raised still higher due to his cognitive impairments and mental illness.

The ALJ was called upon to answer this doubly-heightened duty when Mr. Morlando requested—as he did both in advance of his hearing and during the hearing itself, *see* A.R. 34, 217, 218—that the ALJ obtain testimony from his treating physician, Dr. Clements.

7

Admittedly, the Administrative Record already included charts and reports from Dr. Clements. *See* R. 569-72, 576, 579-80, 582-92. But in the words of Judge Glasser of the Eastern District of New York:

> [I]t is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference.

*Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) (emphasis in original).

The deference Judge Glasser invokes is known as the "treating physician rule." As this Court has had some cause to repeat, the treating physician rule requires an ALJ to give "controlling weight to the opinion of the treating physician" unless she provides "good reasons" otherwise; failure to do so is sufficient ground for a remand. *Crossman v. Astrue*, No. 3:08cv01823 (MRK), 2010 WL 2982987, *6 (D. Conn. Mar. 16, 2010) (quoting *Gunter v. Comm'r of Soc. Sec.*, 361 Fed. App'x 197, 198-99 (2d Cir. 2010); *see also Edwards v. Astrue*, No. 3:10cv1017 (MRK), 2011 WL 3490024, at *11 (D. Conn. Aug. 10, 2011); *Ardito v. Barnhart*, No. 3:04cv1633 (MRK), 2006 WL 1662890, at *3 (D. Conn. May 25, 2006); *Velazquez v. Barnhart*, No. 3:02cv1264 (MRK), 2004 WL 367614, at *8-9 (D. Conn. Feb. 19, 2004).

Judge Glasser, in another passage repeatedly quoted by district courts throughout the Second Circuit, has described how the treating physician rule interacts with the heightened duty owed to *pro se* claimants:

8

> [W]hen the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability. Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties to the pro se claimant under the treating physician rule.

*Peed*, 778 F. Supp. at 1246 (citation omitted); *see also Myers v. Astrue*, No. 7:06-CV-0331 (NAM/RFT), 2009 WL 2162541, at *16 (N.D.N.Y. July 17, 2009); *Pittman v. Barnhart*, No. 3:05cv1059 (MRK)(WIG), 2007 WL 470269, at *5 (D. Conn. Jan. 18, 2007); *Jones v. Apfel*, 66 F. Supp. 2d 518, 538-39 (S.D.N.Y. 1999). The importance of the treating physician's opinion, along with what was in this case a doubly-heightened duty to help Mr. Morlando obtain it, together produce a clear cause for remand.

On remand, the ALJ shall issue a subpoena, pursuant to 20 C.F.R. § 404.950(d), for the appearance and testimony of Dr. Clements or any other physician who has treated Mr. Morlando more recently than Dr. Clements.[1] The Court notes that, according to the administrative record, Dr. Clements treated Mr. Morlando in 2009 and 2010—that is, the time leading up to and during Mr. Morlando's hearing. The availability of such recent information about the claimant makes even more puzzling the ALJ's sole reliance on evaluations, by examining rather than treating physicians, that were then two years old.

At Mr. Morlando's hearing, the Vocational Expert testified that a claimant who had difficulty moving his hands or neck for a prolonged period of time would not be able to do the jobs Mr. Morlando was found able to do. *See* A.R. 48. The Court thus finds it particularly

---

[1] As this Court held recently in *Edwards v. Astrue*, the physician's testimony must be taken either in person or, upon notice to Mr. Morlando, by video teleconference. Testimony by telephone or other means would require both notice and consent. *See Edwards*, 2011 WL 3490024 at *7-10; *cf.* 20 C.F.R. §§ 404.936(c), 404.950.

crucial for the ALJ to obtain a treating physician's opinion as to whether or not Mr. Morlando would have difficulty with such motions.

On remand, the ALJ is also cautioned not to base her decision on gaps or omissions in treating physicians' reports, *see* A.R. 12 ("The claimant's most recent treatment records from the Department of Corrections do not show any findings related to back and neck complaints."), but to take affirmative steps to fill those gaps and understand the reason for any omissions. *See Rosa*, 168 F.3d at 79-80. Once the ALJ has obtained testimony from Mr. Morlando's treating physician, she must either accord "controlling weight" to that physician's opinion or explicitly state her reasons for giving it less deference. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Finally, the Court notes several instances in the administrative record that refer to Mr. Morlando's bi-polar disorder. *See, e.g.*, A.R. 238, 323, 324, 326, 347, 357, 575. The report from the examining psychologist, Dr. Badillo-Martinez—to which the ALJ gave "great weight," A.R. 13—does not mention bi-polar disorder; instead she diagnosed Mr. Morlando as having "dysthymic disorder." A.R. 261; *cf.* A.R. 9. On remand, the ALJ is instructed to seek out Mr. Morlando's treating psychologists or psychiatrists, if any, on order to obtain a more recent and reliable opinion about his mental health and cognitive capacity.

## V.

The transcript of Mr. Morlando's hearing reveals a proceeding that was hardly cursory, and an Administrative Law Judge who was both gracious with the claimant and attentive to the material in the record. However, when a claimant appears *pro se*, hampered by cognitive impairments and poor mental health, an ALJ must not only attend to the record before her; she must take affirmative steps to develop the record, particularly with information from the

treating physicians who best know the claimant and his ailments. Because that did not happen in this case, Mr. Morlando's Motion to Reverse the Decision of the Commissioner or for Remand for Rehearing [doc. # 31] is GRANTED to the extent that it seeks a new hearing, and this case is REMANDED for future proceedings consistent with this opinion. The Commissioner's Motion to Affirm [doc. # 33] is DENIED.

    **The Clerk of Court shall enter judgment of remand in accordance with this decision and close the file.**

                                               **IT IS SO ORDERED.**

                                       /s/  Mark R. Kravitz
                                       United States District Judge

**Dated at New Haven, Connecticut: September 20, 2011.**